IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILED
IN COURT
CHARLOTTE, N. C.

JUN - 7 2005

U. S. DISTRICT COURT
W. DIST. OF N. C.

UNITED STATES OF AMERICA          )
                                  )
        v.                        )        3:04CR00053
                                  )
ALVAN DEVON HOLT                  )

## MEMORANDUM OPINION

OSTEEN, District Judge

Defendant Alan Devon Holt was arrested after police executed a search warrant at a single-family home in Charlotte, North Carolina. The search yielded illegal drugs, a firearm, and other contraband. Based on the evidence seized during the search, Holt was indicted for violations of federal firearms and drug laws,[1] and he was convicted by a jury of all charges. The Government's evidence against Holt was composed entirely of the evidence seized during the search. This matter arises from Holt's Motion to Invalidate the Search Warrant and Suppress Evidence. For the reasons set forth below, the motion will be GRANTED and the charges against Holt will be DISMISSED.

---

[1] Holt was charged in a three-count indictment with possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1), possession with intent to distribute marijuana and cocaine, in violation of 21 U.S.C. § 841(a)(1), and the use and carrying of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

## I.   BACKGROUND

A search warrant may issue upon probable cause to believe that a crime is presently being committed or upon probable cause to believe that fruits of a crime are likely to be found at the place to be searched.  Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983); Brinegar v. United States, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-11 (1949).  With that premise in mind, we will review the facts relevant to the motion to suppress filed in this proceeding.

In January 2004, Officer S. S. Greene of the Charlotte Mecklenburg Police Department was a veteran of four and one-half years of police duty.  Most recently, he had approximately one and one-half years of experience in drug enforcement.  During that time, he had received training in drug enforcement from local, state, and federal sources.  He had been involved in at least 350 drug arrests and 150 search warrants.  The court finds Officer Greene was a well-experienced, well-trained police officer specializing in drug enforcement as the year 2004 opened.

Some time before 7:05 a.m., on January 2, 2004, Officer Greene received information from a confidential source, which he took to a state magistrate to obtain a search warrant for the premises located at 235 Kingville Drive, Charlotte, North Carolina, and of an individual named "Big Al," also known as Alvan Devon Holt.  The affidavit Officer Greene supplied to the

magistrate in support of probable cause in material part is as

follows:

> I have received information from a confidential and
> reliable informant who states they [sic] have been to
> the above listed location and observed the above
> described black male possessing and selling marijuana
> from the above listed location. This informant has
> witnessed the above described black male possessing and
> selling marijuana from the above listed location within
> the past 48 hours. This officer has known the
> informant for approximately 2 years. During this time,
> the informant has given me information on drug activity
> that I have been available to verify through my own
> independent investigations. During this time, the
> informant has made purchases of controlled substances
> under the direct supervision of this officer. This
> informant admitted to using a controlled substance and
> is familiar with how marijuana is packaged for sale in
> the Charlotte area.

There is no evidence before this court that any additional

testimony or other information was supplied to the magistrate.[2]

The warrant was issued and it authorized the search of "[a]

single story, single family dwelling constructed of beige vinyl

siding with white trim and green shutters located at 235

Kingville Drive, Charlotte, Mecklenburg County, North Carolina,

USA." It also listed a person to be searched and described him

as "a black male, called 'Big Al' known as Alvan Devon Holt,

8/23/74 with medium complexion approximately 6'3" and 265

pounds." It authorized the seizure of "[m]arijuana, a controlled

---

[2] At the hearing on the motion to suppress, the Government
made no offer of evidence. Both the Government and Defendant
relied on the search warrant itself for their respective
positions.

3

substance, evidence of ownership, access or control of property, firearms, pagers, cellular phones, currency an [sic] other items of drug furtherance."

The officers who searched the home found marijuana, cocaine, a scale, a loaded firearm, approximately $7,500 in cash, and other items they believed to be indicative of drug distribution. They also found Holt who was subsequently arrested.

Shortly before trial, Holt moved to invalidate the search warrant and suppress the evidence seized from the residence. Because the motion was made on the eve of trial, the court allowed the trial to proceed and allowed the Government time to respond. Holt was convicted by a jury on all charges. The motion remains pending before the court.

## II. DISCUSSION

Holt asserts the warrant should be invalidated and the evidence should be suppressed pursuant to the exclusionary rule. Holt argues the search was not supported by probable cause because the warrant failed to particularly identify the items to be seized and it was overbroad. Additionally, it failed to provide sufficient indicia of reliability because the applicant failed to corroborate the confidential informant's information, the applicant included no supporting affidavits or testimony, and the warrant includes various technical errors. Holt further argues that the good faith exception of <u>United States v. Leon</u>,

468 U.S. 897, 104 S. Ct. 3405 (1984), would not apply to save the evidence because the warrant was so facially deficient that no officer could have reasonably relied on it.

The Government, in response, asserts that the warrant is sufficiently particular, based on reliable information, and otherwise supported by probable cause. The Government also argues that even if the warrant should fail for lack of probable cause, the evidence should not be suppressed because the Leon good faith exception would apply to bar application of the exclusionary rule. The United States Attorney for the Western District of North Carolina[3] has stipulated that if the seizure of the evidence under the search warrant is determined to be invalid, the entire proceeding should be dismissed.

## A. Probable Cause

In reviewing probable cause determinations, a reviewing court may only consider "the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). Here, the validity of Holt's warrant must rise or fall in its sufficiency within the four corners of the affidavit, because there is no evidence that any additional information was supplied to the magistrate.

---

[3] The case was tried in the Western District of North Carolina, Charlotte Division.

5

The Fourth Amendment requires that search warrants must be supported by probable cause. U.S. Const. amend. IV. Because of the Fourth Amendment preference for searches conducted pursuant to a warrant, courts should interpret search warrant affidavits in a "commonsense," rather than a "hypertechnical" manner to encourage law enforcement officers to use the warrant process. Illinois v. Gates, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983). Reviewing courts should give "great deference" to a magistrate's determination of probable cause and so should assess only whether the magistrate had a "substantial basis for concluding that a search would uncover evidence of wrongdoing." Id. (internal quotations omitted).

A magistrate's probable cause determination is not unbounded, however, and the Supreme Court of the United States has set out a "totality-of-the-circumstances" test for reviewing these judgments. The issuing magistrate must make "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238, 103 S. Ct. at 2332. This must be an independent judgment, and a magistrate may not simply uphold the "conclusory allegations" of others. Wilhelm, 80 F.3d at 119. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action

cannot be a mere ratification of the bare conclusions of others."
Gates, 462 U.S. at 239, 103 S. Ct. at 2333. An affidavit
composed entirely of other people's conclusions is a "bare bones"
affidavit, which gives the magistrate "no basis at all for making
a judgment regarding probable cause." Id. For example, an
officer's statement of his belief or suspicion that contraband is
stored in a home is not enough to establish probable cause to
search that home. Nathanson v. United States, 290 U.S. 41, 47,
54 S. Ct. 11, 13 (1933). Probable cause must be found in the
"facts or circumstances presented to [the issuing magistrate]."
Id. Similarly, an officer's statement that he has "'received
reliable information from a credible person'" and "'believe[s]'"
drugs are stored in a home is also inadequate. Gates, 462 U.S.
at 239, 103 S. Ct. at 2332-33 (quoting Aguilar v. Texas, 378 U.S.
108, 84 S. Ct. 1509 (1964)).

An officer may rely on an informant's tip in establishing
probable cause. See id. at 241, 103 S. Ct. at 2334 (citing Jones
v. United States, 362 U.S. 257, 269, 80 S. Ct. 725, 735 (1960),
overruled on other grounds by United States v. Salvucci, 448 U.S.
83, 100 S. Ct. 2547 (1980) (stating that an affiant's firsthand
knowledge is not required). Two important factors in assessing
probable cause in such situations are the informant's "veracity"
and his "basis of knowledge." Id. at 238, 103 S. Ct. at 2332.
Hearsay information is allowed in an affidavit "so long as a

7

substantial basis for crediting the hearsay is presented."
Jones, 362 U.S. at 269, 80 S. Ct. at 735. An officer can rely on
an informant's statement if it "is reasonably corroborated by
other matters within the officer's knowledge." Gates, 462 U.S.
at 242, 103 S. Ct. at 2334 (citing Jones, 362 U.S. at 269, 80 S.
Ct. at 735). An officer must make more than conclusory
statements to demonstrate an informant's reliability. In
Wilhelm, the officer described an anonymous informant as
"mature," as a "concerned citizen," and as "project[ing] a
truthful[] demeanor," even though the officer received the
information in a brief telephone conversation and had never met
the informant. 80 F.3d at 118. The court found these
"conclusory descriptions" insufficient to show the informant's
reliability and "dubious" considering they were based on such
scant knowledge by the officer. Id. at 120-21.

"One important factor in determining whether an informant's
tip has established probable cause is the degree to which
the . . . officer can corroborate that tip." United States v.
Miller, 925 F.2d 695, 698 (4th Cir. 1991). This corroboration
must be of material facts. For example, in United States v.
Lalor, the affiant relied on information obtained from two
confidential informants and his independent corroboration of
their statements. 996 F.2d 1578, 1580 (4th Cir. 1993). The
officer had verified the suspect's home address, his vehicle, his

8

alias, his past drug activity, and, additionally, the two informants corroborated each other's statements. Id. The court found this to sufficiently establish the informants' reliability. Id. at 1581. On the other hand, in Wilhelm, the Fourth Circuit held that an officer who had verified only the informant's directions to the home, which was public information, had not sufficiently corroborated the statements. 80 F.3d at 121. However, not all tips must be independently corroborated. United States v. DeQuasie, 373 F.3d 509, 519 (4th Cir. 2004). Whether an informant's tip must be corroborated to be found reliable will depend on the facts and circumstances of each case. Id.

In addition to assessing the informant's reliability, a magistrate must also determine whether the information is sufficient. Specifically, there must be "a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238, 103 S. Ct. at 2332. "[T]he crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." Lalor, 996 F.2d at 1582. Whether there exists a sufficient "nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." Id. Residential searches for evidence of drug trafficking have

been upheld where information links the suspect's drug activity with the residence, but courts generally find probable cause to be lacking if no such link appears. Id. at 1583. For example, in Lalor, the court found no such nexus when the drug sales were said to take place away from the residence and no information showed the distance between the two locations. Id. Because this information was lacking, the magistrate had no information on which to judge this aspect of probable cause, and the warrant was held to be invalid. Id. On the other hand, in United States v. Wylie, a sufficient nexus existed where the information showed that the defendant had stored drugs at his girlfriends' apartments in the past, the residence in question was rented to a woman, the defendant had given this woman's phone number (the number of the residence) to someone as a way to reach the defendant, the defendant had been inside the residence, and a van he was seen driving and which was registered to him had been parked at the residence but was driven away by someone else. 705 F.2d 1388, 1391 (4th Cir. 1983).

Officer Greene's affidavit in support of Holt's warrant includes relatively little information to support the confidential informant's reliability. The confidential source had provided information for approximately two years which

Officer Greene may have been able[4] to verify through independent investigation. Even assuming he had verified some previous information, Officer Greene does not indicate that on this occasion he had verified or attempted to verify any of the informant's statements. The Fourth Circuit Court of Appeals has given conflicting statements on the sufficiency of this type of information to support an informant's credibility. See United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994) (characterizing as bare bones an affidavit that stated "a confidential and reliable informant known to this affiant has stated to this affiant that he/she has seen a quantity of crack cocaine in the residence within the past 72 hours" but upholding the warrant in light of additional testimony given to the magistrate); contra United States v. Fuller, 441 F.2d 755, 759 (4th Cir. 1971) ("We think that a magistrate is entitled to infer that an informant who has provided information in the past which has proved to be accurate will probably continue to give accurate information in the future."). Other circuits disagree on the issue. See, e.g., United States v. Fairchild, 940 F.2d 261, 264

---

[4] Even this finding requires a leap of faith. The precise wording in the affidavit is "I have been available to verify." (Emphasis added.) This may be an unfortunate choice of words employed by the affiant; it may be a misspelling; or it may be as it is written - "I have been available." The first two interpretations have no evidentiary support; the last is the only interpretation that needs no extrinsic support, but from it there can be no certain conclusion that the information was ever verified.

11

(7th Cir. 1991) (holding that the judge had sufficient
information on credibility where the officer described the
informant as "credible and reliable," the informant had
previously given correct information, and the informant had seen
the defendant in possession of drugs); contra United States v.
Barrington, 806 F.2d 529, 531 (5th Cir. 1986) (describing an
affidavit as bare bones when it stated only that the officer knew
the confidential informant and that the informant had provided
correct information in the past). Because Officer Greene
provided so little information to show the informant was credible
on this occasion, and in light of other weaknesses discussed
below, this court finds the affidavit analogous to the bare bones
affidavit the Gates Court so clearly described as insufficient.
Officer Greene's statements amount to little more than his own
belief or conclusion that the informant was correct, and provide
virtually no basis upon which the magistrate could have
independently assessed the informant's reliability.
Nevertheless, because the law on this matter is unclear, the
court will for purposes of this discussion accept that the
confidential informant was reliable and proceed to the issue of
whether there was a sufficient nexus between the drug activity
and the residence.

The affidavit used to support this search fails because it
does not show a "fair probability" that contraband or evidence of

marijuana sales would be found at 235 Kingville Drive. From the affidavit it does appear that within 48 hours before the preparation of the affidavit by Officer Greene, the informant had seen Big Al sell some amount of marijuana at 235 Kingville Drive. However, nothing indicates there had been or would be more than a single transaction. Nothing more can be derived from the affidavit as to the current presence of drugs or drug-related paraphernalia on the premises. Nothing in the affidavit leads to any reasonable possibility, much less a fair probability, that drugs or drug-related activity would be at the premises at the time of the search. The only finding the affidavit supports is that some time up to 48 hours before January 2, 2004, an individual sold some marijuana on the premises at 235 Kingville Drive.

What the affidavit does not contain is even more significant than what it does contain. There is no indication that Big Al resides at the premises or has ever been on the premises prior to this single occasion. There is no indication that Big Al owns, or pays rent, or is an invited guest at 235 Kingville Drive. There is no information provided to show whether the sale was inside or outside the house. There is no information that Big Al had an additional amount of marijuana for sale or that he would return with more at a later time. There is not even an indication of the quantity sold on that one occasion. In short,

there is no information that links ongoing or future drug
activity to this home, and thus there is no indication that a
search of the home would yield any evidence of drug activity.
The failure to include this information, even some portion of
which may have provided a sufficient nexus, only highlights the
failure of the officers to corroborate any of the informant's
statements.

In United States v. Lalor, the court invalidated a warrant
on far more information tying the suspect to the residence.  In
that case, the woman who rented the apartment listed as a
resident "Jerry Jones" who had the same birth date as Lalor,
Lalor's car was seen parked nearby, and Lalor had given the
apartment's address as his own during a traffic stop.  Lalor, 996
F.2d at 1580.  Still, the court found no nexus between Lalor's
drug trafficking activity and the apartment and invalidated the
warrant.  Id. at 1583.

The failure of the officers in the case at bar to provide
any support for the informant's statements and the total lack of
information to show any nexus between drug activity and the
residence presents no substantial basis for the magistrate's
determination that a search of the residence was supported by
probable cause.  The state magistrate did not have enough facts
and circumstances upon which to exercise independent judgment
about the existence of drugs and other contraband at the

14

residence. It appears the magistrate acted as a "rubber stamp" by simply accepting Officer Greene's assertion of the presence of contraband in the home, rather than making his own independent judgment. Therefore, this court finds the search warrant and the affidavit upon which it is based to be so bare bones and lacking that it cannot be sustained.

Finding that the contested search warrant was based upon no more than a bare bones and insufficient affidavit is by itself sufficient reason to grant the motion to suppress. Although the good faith exception of United States v. Leon, 468 U.S. 897, 913, 104 S. Ct. 3405, 3415 (1996), may be used to bar application of the exclusionary rule against a later-invalidated warrant, this exception does not apply in the case of a bare bones affidavit. Wilhelm, 80 F.3d at 121. However, in the interest of completeness, this court deems it appropriate to consider what import Leon's good faith exception may have upon the present search warrant.

## B. The Leon Good Faith Exception

In Leon, the Supreme Court determined that not all defective search warrants must result in suppression. Instead, the Court instructed that a balancing approach should be used to determine in each case whether the benefits of deterring police misconduct justify the substantial costs of exclusion of the evidence. See Leon, 468 U.S. at 922, 104 S. Ct. at 3420. If an officer has

15

obtained a search warrant from a magistrate, it will usually be enough to establish that the officer acted in good faith. Id. "Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." Id.

There are four circumstances in which an officer has "no reasonable grounds for believing that the warrant was properly issued." Id. at 923, 104 S. Ct. at 3420. Suppression remains appropriate if (1) the magistrate was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the "magistrate wholly abandoned his judicial role"; (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." Id. at 923, 104 S. Ct. at 3421 (internal citations and quotations omitted).

The first, second, and fourth situations that would allow suppression of evidence despite the Leon good faith exception do not apply here. There is no evidence that the magistrate had false information or was misled by Officer Greene. See, e.g., Wilhelm, 80 F.3d at 123 (holding Leon did not apply when the officer described an anonymous informant as "mature," as a

16

"concerned citizen," and "truthful" in what the court found to be "attempts to endue the affidavit with the appearance of genuine substance"). There is also no evidence that the magistrate "wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York." Leon, 468 U.S. at 923, 104 S. Ct. at 3421 (referring to the situation in Lo-Ji Sales, 442 U.S. 319, 99 S. Ct. 2319 (1979), where the Court held that the Town Justice who signed the warrant application, was present during its execution, and actively participated in the search "did not manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application"). Finally, this case presents no technical deficiency on the face of the warrant. See, e.g., Massachusetts v. Sheppard, 468 U.S. 981, 990-91, 104 S. Ct. 3424, 3429 (1984) (holding that officer acted in good faith even though he used the wrong warrant application form, where the affidavit supported probable cause and was sufficiently particularized, but where the officer could not find the correct form because the courthouse was closed on Sunday, and where the magistrate assured him the warrant was adequate).

Here, we deal with the third situation, which looks to "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23, 104 S. Ct. at 3420 n.23. The inquiry focuses on the officers, and it requires a less demanding showing

17

than the "substantial basis" standard used to review a magistrate's probable cause determination. United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002). Additionally, "the question of reasonable reliance must be evaluated under an objective standard based upon all relevant facts." United States v. Edwards, 798 F.2d 686, 692 (4th Cir. 1986). "This objective test requires a determination of the knowledge of a reasonable officer, not an examination of an officer's subjective motives." United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995).

Independent corroboration by police of an informant's statements is not always required. For example, United States v. Perez involved the use of a known informant with no independent corroboration by police. 393 F.3d 457, 459 (4th Cir. 2004). In Perez, the officer applied for a warrant based on an affidavit describing the statements of a confidential but "reliable and credible witness" who had observed large quantities of drugs at a residence. The officer also provided to the magistrate a separate, signed statement from the informant which described his relationship with the residence, described his reasons for coming forward, and included more information about the drug activity. In the signed statement, the informant included his name, date of birth, mailing address, and Social Security number. The officer also told the magistrate that the informant had witnessed drugs in the home within the last few days. The Fourth Circuit held

the officer acted in good faith because he had provided the magistrate enough information to assess the informant's reliability and to support a fair conclusion that drugs would be found in the home. Id. at 462. The court distinguished Wilhelm, a case in which Leon failed to protect seized evidence, on several grounds. Importantly, Wilhelm involved a bare bones affidavit which might simply have asked the magistrate to "take [the officer's] word for it" that drugs were being sold at the house and the informant was credible. Id. at 465. Perez's warrant was based on an affidavit that did "far more than merely state the affiant's belief that probable cause existed." Id. at 465 (internal quotations omitted).

It appears, also, that evidence indicating a lack of good faith is enough to meet one of the exceptions to Leon, and that evidence of bad faith is not required before evidence will be suppressed. The Fourth Circuit's discussion in Bynum arguably raises this issue. The Wilhelm court declined to find that the officer had acted with "deliberate bad faith," 80 F.3d at 123, but the Bynum court distinguished its facts from those in Wilhelm, partly on the ground that no bad faith was evident, 293 F.3d at 198. This was not the key factor for the Fourth Circuit's holding in Bynum, however, because the court discussed other important grounds of distinction between the two cases. In Bynum, a search of the same apartment three and one-half months

19

earlier had turned up drugs, guns, and ammunition, and substantially corroborated the informant regarding the later search. 293 F.3d at 197. Additionally, and "critically," the officers in Bynum had included the suspect's criminal history in the affidavit, and this corroboration by police "far exceed[ed] that in the affidavit at issue in Wilhelm." Id. Thus, evidence of deliberate bad faith by an officer is not required before evidence will be suppressed.

While the test is an objective one and the officer's knowledge, rather than his motives, is the appropriate focus, it remains unclear how an officer's knowledge that a warrant lacks probable cause should affect the application of the Leon good faith exception. In Edwards, the court refused to suppress evidence because it found the officers acted in good faith reliance on the warrant even though an officer admitted that he knew the affidavit lacked crucial information about the informant's reliability. 798 F.2d at 689, 691-92. However, in two oral, unrecorded proceedings, the officers gave the magistrate more information about the informant's reliability, but this information was not included when the magistrate typed the affidavit. Id. at 692. The court found it objectively reasonable for the officers "to rely on their personal knowledge of the two unrecorded proceedings before the magistrate." Id. at 691-92. The court emphasized that an officer's "subjective

belief in what the affidavit should contain is not dispositive of whether the officers could reasonably rely on the warrant." Id.

In the instant case, it is difficult to make direct comparisons because most of the Fourth Circuit's cases have revolved around the reliability of the informant rather than the insufficiency of the informant's statements. This case is not like Edwards, because there the officers knew the magistrate had enough information to legitimately authorize the search. The only problem was that the affidavit (typed by the magistrate himself) did not include all of the information the magistrate had learned. Had the affidavit included that information, it undoubtedly would have been sufficient to support probable cause. Edwards, 798 F.2d at 689. The error in Edwards was more akin to a technical deficiency. See, e.g., Sheppard, 468 U.S. at 987-88, 104 S. Ct. at 3427-28 (holding that officers "took every step that could reasonably be expected of them" when they executed deficient warrant because applying officer's affidavit supported probable cause, officer observed magistrate make several corrections to warrant application form, and applying officer believed magistrate's assurances that warrant was adequate as corrected).

This case is also not like Bynum, because in that case the officers had conducted a prior fruitful search and further independent investigations, and the court found that the warrant

21

was substantially corroborated.  Finally, this case is not like Perez, because that case involved far more detail about the drug activity in the home.  The Perez affidavit was based on a known informant who could recount to the magistrate first-hand knowledge of ongoing drug activity in the residence, thus allowing for a reasonable assessment of the probability of finding contraband in the home.  The warrant in Perez was not unreasonably lacking in probable cause.

In fact, this court has found few other cases involving a search warrant issued on so little information regarding the existence of contraband in the residence.  One case worthy of note is United States v. Fairchild, 940 F.2d 261 (7th Cir. 1991), in which the court upheld on Leon grounds a warrant based on the following affidavit:

> [the officer/affiant received] from a credible and
> reliable person who has on previous occasions given
> affiant information regarding the trafficking in
> controlled substances that has proven to be true and
> correct, but whose identity cannot be revealed for
> security reasons, [and] that the above said credible
> and reliable person did within the past thirty-six
> hours see a controlled substance, to wit:
> methamphetamine unlawfully possessed by the [defendant]
> at the above described premises.

Id. at 263.  The court found the officers acted in good faith in executing the warrant because there was "no evidence that the officers knew anything that would contradict the affidavit's assertion" that Fairchild controlled the premises, because

22

"nothing indicates that the officers had reason to believe the drugs had been removed," and because the informant remained unnamed for security reasons. Id. at 264-65.

The Seventh Circuit's reasoning appears to require that police have positive knowledge their information is incorrect before they will lose the protection of the good faith exception. Under Wilhelm, such knowledge, or the reckless disregard of such knowledge, should fall under the first exception to Leon, rather than the third. The language of Leon makes clear that knowledge of falsity, or at least some reckless indifference for the truth, is not required in assessing the third situation precluding the good faith exception. Leon states multiple situations in which good faith cannot be found. The first situation is where the affiant knew the information was false or should have known the information was false. 462 U.S. at 923, 104 S. Ct. at 3421. The third is where the affidavit is "so lacking in indicia of probable cause" that to follow it would be unreasonable. Id. The first situation is listed separately from and intended to be separate from the third, and to require an affirmative showing that officers knew their information was incorrect in both circumstances would blur the line between them. A better reading of the third circumstance is that if an officer was unreasonable in failing to realize that the warrant lacked probable cause, he could not be said to have acted in good faith. This means that

the officer must have known the magistrate's information (including the affidavit, attached documents, and oral testimony presented to the magistrate) was deficient, but need not have known it was false.

In this case, any officer who had experience and training should have known that Officer Greene's affidavit, which is the only information the magistrate had, provided no cause to believe contraband would be found at 235 Kingville Drive. As such and considering all of the information presented to the magistrate, this court cannot find that a reasonably well-trained officer could have executed the warrant in good faith. Further, Officer Greene has been found to be a well-experienced, trained officer specializing in drug enforcement and to have participated in the execution of 150 search warrants. With this advanced specialization and experience, any officer objectively must have known that the warrant was completely lacking in indicia of probable cause to believe that contraband would exist at this residence.

In essence, the Leon good faith exception is an effort to allow for mistakes, omissions, and other honest errors that occur in the hectic and dangerous business of law enforcement, while still retaining some mechanism to protect Fourth Amendment rights when police officers overstep their bounds. In this case, had officers verified that Holt had some connection to the home, such

24

as a utility bill in his name or some information that his
girlfriend owned the home, the search may have survived scrutiny.

Applying the objective standard, the court finds that the
search warrant was so lacking in probable cause that an officer
could not reasonably rely upon it.  Thus, even under the Leon
exception the search should be invalidated.

## III. CONCLUSION

For the reasons set forth herein, the court will grant
Defendant's Motion to Invalidate the Search Warrant and Suppress
Evidence.  An order and judgment in accordance with this
memorandum opinion shall be filed contemporaneously herewith.

This the 7th day of June 2005.


United States District Judge